**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Indriany S.M.C.,

Petitioner,

v.

David Easterwood, *in his official capacity as Field Office Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; Joel D. Garcia, *in his official capacity as Field Office Director, El Paso Field Office, U.S. Immigration and Customs Enforcement*; Todd Lyons, *in his official capacity as Director of U.S. Immigration and Customs Enforcement*; Kristi Noem, *in her official capacity as Secretary of Homeland Security*; U.S. Department of Homeland Security; U.S. Immigration and Customs Enforcement; and Pamela Bondi, *in her official capacity as Attorney General of the United States*,

Respondents.

Civ. No. 26-539 (JWB/JFD)

**ORDER ON MOTION FOR EAJA FEES**

---

Having prevailed in this matter, Petitioner Indriany S.M.C. seeks to recover her costs and attorneys' fees under the Equal Access to Justice Act ("EAJA"). (Doc. No. 17.) Respondents ask for Petitioner's request to be denied in full or significantly reduced. (Doc. No. 19.) Petitioner has submitted a motion for leave to file a reply (Doc. No. 20), which is granted, and her reply brief (Doc. No. 20-2) has been considered. For the following reasons, Petitioner is awarded fees but at a reduced amount.

## BACKGROUND

The January 27, 2026 Order granting habeas relief sets out the underlying facts in

detail. (*See* Doc. No. 8 at 2–3.) In brief, Petitioner arrived to the United States in December 2022 as an unaccompanied minor with her infant child. (*Id.* at 2.) She was encountered by immigration officials, who placed her in a humanitarian shelter and later released her to the care of a legal guardian in Minnesota after finding she was neither dangerous nor a flight risk. (*Id.*)

On January 14, 2026, Respondents arrested Petitioner at gunpoint from inside her home following their pursuit of another adult who lived at the residence. (*Id.* at 2–3.) She was detained alongside three other adults, a three-year-old, and a one-year-old. (*Id.* at 3.) She was initially held in Minnesota for four days and then flown to a detention center in Texas. (*Id.*)

Following review of the parties' submissions, Petitioner was ordered released in Minnesota. (Doc. No. 8 at 7.) The release order precluded Respondents from imposing conditions on Petitioner in conjunction with her release. (*See id.* at 8.)

Respondents nonetheless released Petitioner with an Order of Release on Recognizance ("OREC"), which prompted her to file a motion to strike the release conditions. (Doc. No. 12.) Respondents were then ordered to show cause for why the OREC should not be stricken and why they should not be sanctioned for violating the release order. (Doc. No. 14.) Respondents rescinded the OREC, and sanctions were not imposed. (*See* Doc. No. 16 at 1–2.)

## DISCUSSION

### I. Legal Standard

The EAJA requires a prevailing party to be awarded fees unless the Government

shows its position was substantially justified or special circumstances make an award unjust. *See* 28 U.S.C. § 2412(d)(1)(A); *United States v. Hurt*, 676 F.3d 649, 652 (8th Cir. 2012). The Government's "position" includes both its positions taken in the litigation and the underlying government agency conduct that led to the action. *See* 28 U.S.C. § 2412(d)(2)(D).

"Substantially justified" means justified to a degree that could satisfy a reasonable person. *Bah v. Cangemi*, 548 F.3d 680, 683 (8th Cir. 2008) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). A substantially justified position need not be correct so long as "a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 683–84 (quoting *Pierce*, 487 U.S. at 566 n.2).

Demonstrating a reasonable basis in law and a reasonable basis in fact are distinct requirements. It is the Government's burden to show both, based on the record in the case. *See Hurt*, 676 F.3d at 652; *see also* 28 U.S.C. § 2412(d)(1)(B) (substantial justification must be determined on the record made in the civil action). A failure to explain the conduct giving rise to the action is therefore a failure of proof by the Government. *See, e.g.*, *Salazar v. Noem*, No. 8:26-CV-44, 2026 WL 594606, at *1–2 (D. Neb. Mar. 3, 2026) (reasoning that Respondents failed to justify the underlying conduct that led to the habeas action).

## II. Analysis

### A. Basis in Law

Respondents argue their litigation position was substantially justified because the statutory question of whether 8 U.S.C. § 1225 authorized Petitioner's detention had not

been resolved by the Eighth Circuit. (*See* Doc. No. 24 at 4–7.) Pointing to district court rulings that agreed with their side of that issue, Respondents contend that their statutory interpretation arguments were based on a reasonable reading of the statute.

While that is correct, it is also incomplete. After Respondents filed their response to Petitioner's EAJA motion, the Eighth Circuit agreed with Respondents that 8 U.S.C. § 1225(b)(2) imposes mandatory detention for "applicants for admission." *Avila v. Bondi*, 170 F.4th 1128, 1134–36, 1138 (8th Cir. 2026). The outcome in *Avila* does not resolve the EAJA inquiry, though, because even a losing position can be substantially justified. *See Bah*, 548 F.3d at 683–84. The larger issue for Respondents is that presenting a non-frivolous statutory interpretation argument does not itself justify the underlying agency conduct that led to the lawsuit.

*Avila* addressed only the scope of statutory authority under Respondents' reading of § 1225. It did not examine how that authority would apply to an unaccompanied minor who was resettled into the country through a government program, like Petitioner. It also did not examine how § 1225 authority was exercised in any individual case, including the timing, location, or manner of effectuating the detention.

Thus, the reasonableness of Respondents' stance on the statutory interpretation issue addresses, at most, the legal component of the EAJA inquiry. It does not address underlying conduct or resolve the factual component of the inquiry.

**B. Basis in Fact**

The remaining question is whether Respondents have shown that the agency conduct that led to this habeas action had a reasonable basis in fact. They have not done

so here.

Respondents do not address the underlying agency conduct that led to this habeas action. They explain why their legal arguments about the meaning of § 1225 were reasonable, but they give no explanation for the conduct that gave rise to this case. They do not identify a specific rationale or factual basis from the record for the decision to detain Petitioner, for arresting her at gunpoint from inside her home, and for flying her to Texas days later. Respondents also offer no justification for subjecting Petitioner to § 1225(b)(2) detention—the agency action that directly led to her habeas filing—even though immigration officials released her into the country when she first arrived. Without more, Respondents' argument about the meaning of § 1225 does not justify the particular use of that authority in this case or show that it had a reasonable basis in fact.

Because Respondents bear the burden, their failure to address the underlying agency conduct or identify a factual basis in the record for it is dispositive, even accepting that their interpretation of § 1225 had a reasonable basis in law. An award under the EAJA therefore follows. No special circumstances make an award unjust here.

**C. Reasonableness of Fees**

The EAJA requires assessing whether the prevailing party unduly protracted the proceedings or incurred unreasonable fees. 28 U.S.C. §§ 2412(d)(1)(C), (d)(2)(D). The statute sets a presumptive rate of $125 per hour, which may be adjusted for increases in the cost of living or other special factors. 28 U.S.C. § 2412(d)(2)(A). Cost of living adjustments are appropriate where supported by the record. *Johnson v. Sullivan*, 919 F.2d 503, 505 (8th Cir. 1990).

Determining what fee is reasonable is discretionary, based on the reviewing court's understanding of the litigation. *See Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 160–61 (1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The inquiry also considers the relationship between the amount awarded and the results obtained. *Id.* at 163 n.10 (citing *Hensley*, 461 U.S. at 437).

Petitioner's counsel requests an award of $38,038.17 in fees for 155.5 hours of work, plus $534.42 in costs. (Doc. No. 17 at 10; Doc. Nos. 18-1, 18-2.) They also request $672.00 for preparing a reply to their EAJA petition. (Doc. No. 20-2 at 6; Doc. No. 21-3.)

The requested base rate of $258.46 per hour for attorneys reasonably reflects inflation since the statutory cap was set in 1996 and is consistent with adjustments for the cost of living that are commonly awarded in this Circuit. That adjustment is appropriate. A rate of $125.00 per hour for support staff is also acceptable.

The submitted billing records largely reflect time reasonably expended under pressing circumstances. They show that one firm's attorneys took the lead on managing the case and drafting the habeas petition, and then relied on a team from another firm to help work on the reply brief. But neither the billing records nor the declaration from counsel explains the choice to outsource the reply work or why this matter was staffed with 10 attorneys. *See Hensley*, 461 U.S. at 433–34 (stating that a fee award may be reduced where documentation is inadequate and recognizing that cases "may be overstaffed"). The number of lawyers is not itself a problem, but the record lacks evidence to differentiate between each attorney's role and contribution.

As a result, there is some indication of excessive, redundant, or unnecessary work

in the billing records. *See Hensley*, 461 U.S. at 434 (stating that counsel must make a good faith effort to exclude excessive, redundant, or otherwise unnecessary hours). Numerous entries indicate that different attorneys worked on the same general task, such as drafting the habeas petition and the reply, without distinguishing what each attorney contributed. For instance, the records show that one firm's team spent around 15 hours drafting the reply, while the other firm's team spent about twice that amount on drafting for the same project. Without more specificity, the entries appear to overlap, at least in part.

Many of the entries also block multiple activities together, with no way to discern how much time was dedicated to each task. Some entries relate to Petitioner's separate habeas case in Texas, include work on the case for Petitioner's roommate, or list activities that do not relate to advancing the litigation, such as calls with reporters. The support staff entries largely relate to clerical tasks. The list of costs includes filing fees for the Texas case, and the research charges do not specify the case or issue for which it was performed. Because the records do not adequately distinguish each entry's contribution to the case, awarding the fees in full is not warranted here.

Respondents assert that Petitioner's request should be cut by 80%. They mainly fault Petitioner's counsel for not using a "template" habeas petition and not narrowly focusing on the statutory interpretation issue. They also argue that billing entries for appellate research, entries that refer to the "anti-ICE" case, and entries that relate to a person named "Valentina" should be rejected as insufficiently specific or not clearly related to Petitioner's case.

Habeas petitioners are not required to limit their claims to relief. *See Hensley*, 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."). And Respondents fail to recognize that the billing records include work tasks that flowed, in part, from the circumstances created by Respondents' decision to fly Petitioner to Texas.

However, as explained above, Petitioner's case was overstaffed without adequate justification, some billing entries appear to include overlapping work or do not directly relate to this case, and others relate to time spent on issues that did not ultimately contribute to Petitioner's success on the merits. *Hensley*, 461 U.S. at 436 (recognizing degree of success as "the most critical factor" to the fee inquiry). Although counsel could not have known that Respondents would not oppose every claim or would not assert a venue defense, the research and drafting on those matters did not fully contribute to the outcome here. And although counsel spent time preparing and filing a habeas petition for Petitioner in Texas because Respondents flew her there, costs and hours spent on that case will not be fully awarded here because Petitioner did not prevail in that case.
A partial reduction of those fees recognizes a reasonable degree of overlapping work without reimbursing for duplicative or redundant work.

Based on this Court's assessment of the billing records, the underlying issues and events, and the results obtained, Petitioner's fee request will be granted but reduced by 50%. This reduction addresses the overstaffing and more proportionately reflects the nature of this litigation, while still recognizing that some portion of each attorney's work

was reasonably necessary to adequately represent Petitioner. *See, e.g.*, *Fox v. Vice*, 563 U.S. 826, 838 ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").

In sum, Petitioner is awarded $19,622.30 ($39,244.59 less 50%).

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner Indriany S.M.C.'s Motion for EAJA Fees (Doc. No. 17) is **GRANTED IN PART**.

2. Petitioner is awarded $19,622.30 in reasonable costs and fees under the EAJA, 28 U.S.C. § 2412.

Date: August 26, 2026

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge